Okay, this case is number 161528, Intellectual Ventures II against IBM. Mr. Picard can emphasize the strongest most important points and we have in mind what you've already told us. Thank you, Your Honor. In the earlier argument you suggested that Porus doesn't disclose analyzing summaries of the data that's received from the peripheral computers and I'd like you to address that because I've read Porus and it talks about analyzing the traffic. It isn't just receiving a conclusion from the peripheral computers, it's receiving information about the traffic and about the raw data. Mr. Picard Maybe I wasn't clear and I apologize if I wasn't. My point earlier was intended to be that the anomaly reports of Porus, there's no evidence that they contain the raw data that was received by the peripherals. They do include summaries of the raw data so that you can determine trends and things like that, right? Mr. Cuthbert That's all it says. We don't know what the nature of the summaries are and if we look... Mr. Picard Well, there are summaries of data, right, about the traffic. Mr. Cuthbert Yes, but we don't know what parts of the data are summarized and if that in doing so would include parts of the raw data and I think on that point... Mr. Picard Okay, that's a fair point but the question is whether it has to be the raw data or whether summaries of the raw data are within the claim. Mr. Cuthbert Right, that does get us back to the claim construction issue. Just on the question of what Porus discloses, I think it's significant. We have said to this court in our blue brief that if we're right about the claim construction requiring the raw data that the proper remedy in the IBM appeal is reversal because there's no substantial evidence that the raw data of the anomaly reports and that the anomaly reports of Porus include the raw data and I don't believe IBM has disputed that. So I will turn to the, I think the key issue there and that is claim construction and we only have one claim construction issue in the IBM case and it is, as Judge Duranto articulated it up front, the question of whether what's sent from the distributed modules of the network, whether they have to include the raw data or simply whether the summaries would be sufficient and I don't want to repeat myself too much. I've made my points about the claim language itself. I would like to turn to the specification. There's been reliance by the board and again by IBM and its blue brief on the disclosure in the 084 patent looking specifically at column 7, line 45, where it says it should be noted that certain devices can be used as sensors to sense data traffic and pass their findings onto the data collection and processing center or other central processing system and so on. And the board and IBM have pointed to that to say, well, look, the specification discloses that the sensors pass findings and therefore that's within the scope of the claim. Again, I think if we look at the prosecution history, what's claimed here versus what's described here are different. What was going on in Roland? I think there was some discussion 10 minutes ago about how in Roland the host doesn't send whatever it, send anything up to anybody else, whether the anything is the data that it analyzed and found to be problematic or a report of the problematic nature of it. The prosecution history doesn't reveal. Well, doesn't that make it pretty hard then to say that the point of the distinction was, as I take it, your point is that you say the distinction had to do with what was being forwarded, report only or result only report versus results plus some data and that just doesn't appear on the face of, what is it, the case. If we look at column 10, there's a description of figure 5 I think may help the issue. Of the 084? Of the 084, I'm sorry, yes. So figure 5 has a flowchart of an exemplary intrusion detection method and here it's, I think, it's explaining what's going on with the sensors that are described in 7 and all that's happening is that the data collected and otherwise received at the data collection and processing center, and so the sensors have sent the data to the data collection and processing center shown in figure 5. There's nothing in the claims to say that the sensors can't make independent findings. They're open-ended claims and the specification as a whole is consistent that what's happening is network traffic itself is being forwarded to the data collection and processing center. Except for that column 7, line 45, and I take it, I guess my recollection, tell me if I'm wrong, that what you say about that sentence, about the sensors out on some nodes of the network, is that it's just an unclaimed embodiment. But to say that that's the only way to understand that sentence is already to conclude that the language of the claim, analyze the data, cannot, under any reasonable ordinary language understanding, include indirect analysis of the data by being given information about the data rather than the data itself. Otherwise, I mean, without that, why not read that sentence as, in fact, covered by the claim as opposed to a unclaimed embodiment? I think it's the inclusion of the claim term, entering, analyzing data, entering the plurality of host sites. Right, but indirect analysis, if that's a thing, includes analyzing something that you don't see directly, which is the data entering at the nodes. Respectfully, Your Honor, our position is that the claim term is not directed to the indirect method, that analyzing data entering means analyzing the data itself. As I said before, because we're right about the claim construction for this term, we should prevail in the IBM appeal because there's no dispute, at least raised below or even here in this appeal, that the PORES reference has that direct method where data itself are analyzed by the enterprise layer level. Unless this panel has further questions, I'll reserve the rest of my time for questions. We proceed with Mr. Merkin. Thank you. Good morning, Your Honors. May it please the Court, Joel Merkin on behalf of IBM. I want to jump straight to the claim construction issue, the one of claim 26. I know this has been discussed, but I really think that the threshold issue here, just like the first question that was asked to IB's counsel of the day is, does claim 26 encompass indirect analysis of data, even data entering the network? The answer to that is yes. There's nothing in claim 26 that requires direct analysis of the data that's entering the network. It simply says that the data collection and processing center analyzes the data entering the network. Whether it does it directly or whether it does it indirectly via reports and analysis results, either way, it's covered by what PORES discloses. I'm not sure that you have to argue at that level broadly because in the hypothetical that I gave earlier, if all you got from the peripheral computer was a statement that an anomaly has been detected and that's all that was forwarded to the central computer, I think that would be a serious question as to whether that was covered by the claims. It's not that level of conclusory statement that gets forwarded. It's much more information than that under PORES. They get information about traffic patterns and things like that. In other words, there's a lot of information that really is data about what's happening. It's not just conclusions. That's exactly correct. PORES does have this disclosure of summaries of the TCPIP packets that are being forwarded on. They're called activity reports. It's reports about the activity. They're analysis results, anomaly reports. This is all described by PORES as being within the reports that are then sent up to the enterprise layer monitor. That is present in PORES. What are some of the specific pieces of information sent up by the surveillance monitor to the enterprise monitor? It doesn't in PORES go through the details of what would be exactly in the report, but these are reports that are analyzed in the activity from the TCPIP packets. It's things like the time that the TCPIP packets entered the network. Activities, summaries of what those TCPIP packets were. For example, if there was a... You said time. That's one concrete thing. Give me a couple of other concrete pieces of information. Sure. The source where it came from and the destination where it went to. For instance, if there was a virus being sent to a particular node within the domain or some command... Different from the node that is doing the reporting, otherwise it's sort of inherent in... That's correct. Different, because the node that's doing the reporting is... Could be forwarding it to something else. That's right. Also, that's the surveillance monitor that's doing the reporting. I see. And so the TCPIP packet could be coming to another network device. And so really, IV's position on the claim construction, they're really reading in two separate types of limitations into Claim 26. It's both how the data is analyzed, and they've used the language in their briefing that it must be analyzed first-hand or must be directly. Neither of those terms are in the claim language. And then there's also, separately from that, the notion of what is being analyzed. And there is where IV argues in terms of what is and must be the raw data that's being analyzed. The data packets or in their appeal briefing, they started using the terminology, the network traffic that must be analyzed. Both of these limitations that they're reading into Claim 26 aren't present in the claim language itself. And so you get to the threshold issue of if Claim 26 does not require direct analysis of the data, then regardless of whether it's data packets, the TCPIP packets that's entering the network, or whether it's reports, under either case you have analysis of the data, and that's what's claimed. What IV tries to argue, because the plain claim language of Claim 26 doesn't support their interpretation, they then turn to the specification. And you heard the argument that the specification discloses allegedly a specific embodiment that is unclaimed. That is incorrect for two separate reasons. One is that the claim language doesn't actually claim the alleged embodiment that they're describing as disclosed in the spec. And secondly, the specification doesn't even describe what they're describing as a second embodiment as a second embodiment. This is all described where it's the sensors passing the findings up to the higher level monitors. That's all described within Column 7 of the 084 patent, which is all in relation to Figure 2, which is described as the embodiment of the present invention. And so even this notion that there's separate embodiments and it's only claiming one embodiment, that's just not the case. The record in this case doesn't support that the prosecution history demands that these elements be read in. As an initial matter, Claim 26, which is the claim at issue in this appeal, isn't amended in that piece of Rowan reference doesn't actually support that it must analyze data directly or firsthand. That discussion simply talks about analyzing data from multiple hosts. And so this is described in Page 25 and 26, footnote 4, of IBM's red brief where we address the file history and how it doesn't support reading in these elements to the claim. I'm going to also address the notion that if you do decide to read into the Claim 26, these elements in it, they shouldn't be read in. But that IV has said that the court should reverse the PTAB's order, and that's incorrect. There actually is evidence in the record of actual data packets, TCPIP packets, being sent up. So at the very least, it would need to be vacated back to the PTAB to make a factual determination. Can I just clarify one thing? The prosecution history where the language of Claim 1 was added, what's at issue, includes the addition of Claim 26 containing much the same language. So if that language said what or meant what they said it said, really would it not be relevant to Claim 26? You are correct. I'm looking at Appendix 1060, Claim 26 is described as new. It's similar to the language that's being amended in the earlier claims, but it's not the exact same language. Still, if you look at the comments, Appendix 1063, there's no notion in that description there that what is being amended there is a first-hand or direct analysis of TCPIP packets. That's just not present. There are no more questions from the panel. I will take a seat with time remaining. No, I think we're fine. We'll save you rebuttal time as well. We'll see what Mr. Picard has to say. Thank you. Well, I guess we don't have rebuttal time. We'll still hear what Mr. Picard has to say. I'll keep this very short. Last one said about the claim construction. I just want to touch on the remedy question. IBM did not argue below that under the construction proffered by intellectual ventures before the board that they had a winning position, and they haven't contested that in their brief here. I think if we look at the final written decision, it's significant that the board didn't, for example, make any findings about what's contained in the anomaly reports of PORUS along the lines that my colleague has suggested to the board today. So I just wanted to make that point. Thank you. These two cases now are taken under submission.